**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

_____

KERRY CONSTATINE,
individually and on behalf
of all others similarly situated,                    JURY TRIAL DEMANDED

               *Plaintiff*,                    Case No.

    v.

LUMBER LIQUIDATORS, INC.
a Delaware Corporation,
LUMBER LIQUIDATORS LEASING, LLC,
a Delaware Limited Liability Corporation,
LUMBER LIQUIDATORS HOLDINGS, INC.;
a Delaware Corporation,
LUMBER LIQUIDATORS SERVICES, LLC,
a Delaware Limited Liability Corporation,

               *Defendants.*

_____

## CLASS ACTION COMPLAINT

Plaintiff, Kerry Constantine, on behalf of herself and all others similarly situated

nationwide, hereby files this Class Action Complaint against Defendants, Lumber Liquidators,

Inc. a Delaware corporation ("Lumber Liquidators"), Lumber Liquidators Leasing, LLC, a

Delaware corporation ("Lumber Liquidators Leasing"), Lumber Liquidators Holdings, Inc., a

Delaware corporation ("Lumber Liquidators Holdings"), and Lumber Liquidators Services, LLC,

a Delaware Corporation ("Lumber Liquidator Services") (collectively referred to as

"Defendants"), for the purchase of Chinese wood veneer flooring containing toxic levels of

formaldehyde, a known carcinogen. In support thereof, Plaintiff states as follows:

1

## PARTIES

1.      Plaintiff, Kerry Constantine, is a resident of Florida who in January 2015 purchased from Lumber Liquidators outlet, located at 5020 South Cleveland Ave., Fort Myers, FL 33907, approximately 1500 square feet of St. James Collection Toasted Chicory 12 mm by Dream Home laminate wood veneer flooring and 1500 square feet of ISP Sloane Street Teak 12 mm laminate wood veneer flooring, both of which was manufactured in China, and both of which contains toxic levels of formaldehyde, a known carcinogen (hereinafter referred to as the "Toxic Laminate Flooring").

2.      Defendant, Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Lumber Liquidators Inc. is licensed and doing business in the State of Florida.

3.      Defendant, Lumber Liquidators Leasing, LLC, is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

4.      Defendant, Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

5.      Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action under 28 U.S.C § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) Plaintiff is a citizen of a State different from the

Defendants; and (3) the number of members of all proposed Plaintiff classes in the aggregate is greater than 100.

7. The Court has personal jurisdiction over Defendants because a substantial portion of the alleged wrongdoing occurred in Florida. Defendants also have sufficient minimum contacts with Florida and have otherwise intentionally availed themselves of the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

9. Defendants have manufactured, labeled and sold, during the Class Period, the Toxic Laminate Flooring as being compliant with "CARB regulations in the State of California." CARB is an acronym for California Air Resources Board, an entity which has promulgated safety standards for the emission of formaldehyde for products sold in California.

10. Defendants' laminate wood flooring is not what it purports to be. The laminated floor wood contains a dangerous level of formaldehyde gas which exceeds the "CARB regulations in the State of California" and the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. 2601 et. seq. (Title VI- Formaldehyde Standards of Composite Wood Products) and is hazardous to human health.

3

11.     Formaldehyde gas can cause cancer, asthma, chronic respiratory irritation and other ailments including skin and breathing problems. The risk of these health problems is significantly greater for children.

12.     Formaldehyde is the sort of toxic substance to which people may be exposed without knowing they are at risk. Day after day, week after week, month after month, Plaintiff lives in her home, an enclosed place, where her flooring is emitting toxic cancer causing fumes.

13.     As such, the Toxic Wood Flooring Defendants sold Plaintiff and other customers poses great health risks.

14.     Defendants' marketing materials for the Toxic Laminate Flooring contain false and misleading information relating to the compliance with California standards and are designed to increase sales of the products at issue.

15.     Defendants deceptively manufactured, labeled, and sold the Toxic Laminate Flooring. The Toxic Laminate Flooring, having no monetary value, is worthless.

16.     Plaintiff and the Class have been damaged by Defendants' dangerous and deceptive Toxic Laminate Flooring. Plaintiff and the Class are entitled to a return of the full purchase price for Toxic Laminate Flooring and other damages to be proven at trial.

**CLASS ACTION ALLEGATIONS**

17.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons who purchased from Defendants laminated wood flooring in the State of Florida that contains formaldehyde emissions that exceed the CARB California emissions standards, in the last three years or depending upon discovery, an earlier date. (the "Class").

18.     The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

19.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

20.     **Numerosity:** Based upon Defendants' publicly available sales data with respect to the Toxic Laminate Flooring, it is estimated that the Class numbers are potentially in the millions, and the joinder of all Class members is impracticable.

21.     **Common Questions Predominate:** The action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right to each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.     Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Defendants' Toxic Laminate Flooring sold to consumers;

b.     Whether the product at issue is misbranded or unlawfully packaged and labeled as a matter of law;

c.     Whether Defendants made unlawful and misleading claims regarding Defendants' Toxic Laminate Flooring;

d.     Whether Defendants violated Florida's Consumer Protection Statues §501.201-§501.213; Florida Deceptive and Unfair Trade Practice Act; Florida Intentional False

Advertising Statute §817.44; Breach of Express Warranty Pursuant to §672.313 Florida Statues;

Merchantability; Usage of Trade Pursuant to §§672.314-672.315 Florida Statues; Breach of

Implied Warranty pursuant to Uniform Commercial Code §2-314; the Florida Food Safety Act;

or the FDCA and regulations promulgated thereunder;

e.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff

and the Class; and

g.      Whether Defendants were unjustly enriched by their deceptive practices.

22.      **Typicality:** Plaintiff's claims are typical of the claims of the Class because

Plaintiff purchase Defendants' product during the Class Period. Defendants' unlawful, unfair,

and fraudulent actions concern the same business practices described herein irrespective of

where they occurred or were experienced. The injuries of each member of the Class were caused

directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants'

misconduct is common to all Class members and represents a common thread of misconduct

resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices

and course of conduct that give rise to the claims of the Class members and a based on the same

legal theories.

23.      **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class.

Neither Plaintiff nor her counsel have any interests that conflict with or are antagonistic to the

interests of the Class members. Plaintiff has retained highly competent and experienced class

action attorneys to represent her interests and those of the members of the Class. Plaintiff and her

counsel have the necessary resources to adequately and vigorously litigate this class action, and

Plaintiff and her counsel are aware of their fiduciary responsibilities to the Class members and

will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

24.     **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

25.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2), are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

26.     The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members, predominate over any questions

affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

27.     Plaintiff and her counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Plaintiff is a member of the Class she seeks to represent.  Plaintiff's claims are typical of the Class members' claims. Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

29.     There are no unique defenses which may be asserted against Plaintiff individually, as distinguished from the Class. The claims of Plaintiff are the same as those of the Class.

30.     No conflicts of interest exist between Plaintiff and the other Class members. Plaintiff has retained counsel that is competent and experienced in complex class action litigation. Plaintiff and her counsel will fairly and adequately represent and protect the interests of the Class.

31.     This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

32.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33.     By creating and disseminating the false and deceptive advertising campaign described herein, Defendants have falsely represented to the public that their product is safe and complies with "CARB regulations in the State of California," when in fact it is not safe and does not comply with CARB regulations in the State of California.

34.     Defendants' conduct constitutes unlawful, unfair and deceptive business acts and trade practices.  Defendants' conduct was consumer-orientated and had a broad impact on consumers at large.  Defendants' conduct was likely to deceive reasonable consumers.

35.     Defendants sold the Toxic Laminate Flooring in Florida and throughout the United States during the Class Period.

36.     Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the reasons discussed above, Defendants have engaged in unfair, false, deceptive, untrue and misleading advertising in violation of Fla. Stat. §§501.201-501.213 (2014).

37.     The Florida Deceptive and Unfair Trade Practices Act also prohibits any, "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Defendants have violated Fla. Sat. §501.204's prohibition against engaging in unlawful acts and practices by, *inter alia,* making the false and deceptive representations, and also through its omissions of material facts, as set forth more fully herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I), 49 Fed. Reg. 30999 (Aug. 2, 1984), and the common law.

38.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

39.     Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014), in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributed to such conduct.

40.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendants' conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014).

41.     Defendants intended to deceive consumers about the safety of their flooring.

42.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

43.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

44.     Defendants' deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff and Class members have suffered injury in fact, actual damages, and have lost money as a result of Defendants' unlawful, unfair and fraudulent conduct.  Plaintiff's damages are the difference in the market value of the product or service in the condition in which it was

delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  Defendants' deceptively labeled, and falsely advertised, and misbranded products have little to no market value.

45.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

46.     Plaintiff alleges that Defendants' conduct violates Florida state law and Plaintiff's state law claims do not obstruct federal regulation.

47.     Plaintiff, on behalf of herself, and all others similarly situated, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendants from containing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

## VIOLATION OF FLORIDA MISLEADING ADVERTISING STATUTE §817.41

48.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

49.     §817.41, Fla. Stat. prohibits "any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

50.     Defendants made false representations of material fact that they knew, or should have known, were false.

11

51.     By creating and disseminating the false and deceptive advertising campaign described herein, Defendants have falsely represented to the public that their product is safe and complies with "CARB regulations in the State of California,"  when in fact it is and does not.

52.     Defendants knew, or should have known, that the aforementioned false representations of material fact disseminated by the Defendants were false.

53.     Defendants disseminated false representations of material fact with the intent to induce Plaintiff, and other members of the Class, to rely on said false misrepresentations.

54.     The false representations of material fact made by the Defendants were likely to deceive reasonable consumers.

55.     The Plaintiff, and other members of the Class, reasonably relied on the false representations of material fact made by the Defendants.

56.     In relying on the false representations of material facts made by the Defendants, the Plaintiff, and other members of the Class, were deceived.

57.     As a direct and proximate cause of Defendants' violation of Florida Statute §817.41, Plaintiff and the members of the Class, were injured when they paid good money for the Defendants' illegal and worthless products.

58.     As a result of Defendants' unlawful false advertising practices, Plaintiff and the members of the Class who purchased Defendants' products in Florida, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and the members of the Class any money paid for the Defendants' product.

59.     Plaintiff and the members of the Class are also entitled to costs, including reasonable attorney's fees.

60.     Under §817.41, Florida Statutes, Florida Plaintiff and the members of the class are also entitled to be awarded punitive damages in addition to the actual damages proven.

**COUNT III**

**VIOLATION OF FLORIDA INTENTIONAL**
**FALSE ADVERTISING STATUTE §817.44**

61.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

62.     Defendants knowingly and intentionally engaged in false advertising concerning the true nature of their product. Defendants' conduct was consumer-oriented and this conduct had a broad impact on consumers at large.

63.     Defendants' actions were unlawful and under the circumstances, Defendants had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

64.     Fla. Stat. § 817.44 (2014) defines "false advertising" as "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

65.     Defendants intentionally, falsely advertised that the Toxic Laminate Flooring was safe, in Florida and throughout the United States.

66.     As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling the Toxic Laminate Flooring to Plaintiff and other members of the Class who purchased this product, Defendants engaged in, and continue to engage in, false advertising in violation of Fla. Stat. § 817.44 (2014).

67.     Defendants' false marketing, advertising, packaging and labeling of the Toxic Laminate Flooring were likely to deceive reasonable consumers.

68.     Plaintiff and other members of the Class who purchased the Toxic Laminate Flooring in Florida were deceived.

69.     Absent such injunctive relief, Defendants will continue to falsely and illegally advertise, market and sell the Toxic Laminate Flooring to the detriment of consumers in the state of Florida.

70.     As a direct and proximate cause of Defendants' violation of Fla. Stat. § 817.44, Plaintiff and the members of the Class who purchased the Toxic Laminate Flooring in Florida were injured when they paid good money for this illegal and worthless product.

71.     As a result of Defendants' unlawful and deceptive business practices, Plaintiff and the members of the Class who purchased the Toxic Laminate Flooring in Florida, pursuant to Fla. Stat. § 817.44, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and the members of the Class who purchased the Toxic Laminate Flooring in Florida any money paid for the Toxic Laminate Flooring.

72.     Plaintiff and the members of the Class are also entitled to attorneys' fees.

**COUNT IV**

**BREACH OF EXPRESS WARRANTY PRUSUANT TO § 672.313 FLORIDA STATUTES AND UNIFORM COMMERICAL CODE §2-313**

73.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

74.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Defendants' products. The terms

14

of that contract included express promises and affirmations of fact made by Defendants on their products' packaging and through its marketing campaign, as described above. The Defendants' products' packaging and advertising constitute express warranties and became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one end, and Defendants on the other.

75.     The Uniform Commercial Code §2-313 provides that express warranties by the seller are created when any affirmation of fact or promise is made by the seller to the buyer which relates to the goods, and thus becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.  In addition, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

76.     Florida has codified and adopted the provisions the Uniform Commercial Code governing express warranties. *See* Fla. Stat. §672.313 (2014).

77.     Florida holds that an express warranty can be conferred to the ultimate user of the product – either in written form or by direct assurances from the manufacturer/supplier – regardless of technical privity. Florida has long recognized that a person to whom an express warranty is conferred is entitled to enforce that warranty against that warrantor. *See Cedars of Lebanon Hospital Corp. v. European X-Ray Distrivutors of America, Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984); *Cf. Moto Homes of America, Inc. v. O'Donnell*, 400 So. 2d 422 (Fla. 4th DCA 1983) (citing Magnusson-Moss Warranty Act at 15 U.S.C.A. 2310(f)).

78.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Defendants' products. The terms of that contract include the express and implied promises and affirmations of fact made by

Defendants' on their products' packaging and through their marketing campaign, as described above.  Defendants' products' packaging and advertising constitutes express and implied warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one end, and Defendants on the other.

79.     At all times, and as detailed above, Defendants expressly warranted that their products were safe, effective and fit for use by consumers and users, including Plaintiff and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

80.     At the time of making these and other warranties with respect to the characteristics of Defendants' products, Defendants knew or should have known that they had breached the terms of the contract, including the express warranties with Plaintiff and the Class.

81.     At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Defendants' products, Defendants knew or should have known that they had breached the terms of the contract, including the express warranties with Plaintiff and the Class by warranting that: their product was safe and complies with "CARB regulations in the State of California."

82.     Members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties in purchasing Defendants' product.

83.     Members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties, when purchasing Defendants' products.

84.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff and the Class could not have known about the toxic nature of Defendants' products.

85.     As a direct and proximate result of Defendants' breach of their contract, including the breach of express warranties with respect to the Defendants' products, Plaintiff suffered injuries as set forth above, entitling Plaintiff to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for the Defendants' products and disgorgement of profits Defendants received from sales of their products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

86.     Florida has long recognized that a person to whom an express warranty is conferred is entitled to enforce that warranty against that warrantor. *See Cedars of Lebanon Hospital Corp. v. European X-Ray Distrivutors of America, Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984); *Cf. Moto Homes of America, Inc. v. O'Donnell*, 400 So. 2d 422 (Fla. 4th DCA 1983) (citing Magnusson-Moss Warranty Act at 15 U.S.C.A. 2310(f)).

87.     Additionally, in *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336 (S.D. Fla. 2009), a case highly analogous to the case at bar, Judge Cohn concluded that the plaintiff's claim for breach of express warranty survived the defendant's motion to dismiss, despite the absence of privity. *Id*. at 1343.  In reaching such a finding, the Court found it significant that the express warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gun. *Id*.

88.     All conditions precedent to Defendants' liability under this contract, including notice, have been performed by Plaintiff and the Class.

## COUNT V

## BREACH OF IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES AND UNIFORM COMMERICAL CODE §2-314

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

17

90.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

91.     Florida has codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2014).

92.     Defendants' products are "goods" as defined in the various states' commercial codes governing the implied warranty of merchantability, including Florida.

93.     As designers, manufacturers, licensors, producers, marketers, and sellers of their products, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability, including Florida.

94.     By placing their products in the stream of commerce, Defendants impliedly warranted that the products are reasonably safe and that all claims on their packaging were true.

95.     As merchants of their products, Defendants knew that purchasers relied upon them to design, manufacture, license and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendants and upon said implied warranties in purchasing and consuming Defendants' products.

96.     Plaintiff and the Class members purchased the Defendants' products for their intended purpose.

97.     Defendants' products' defects were not open or obvious to consumers, including Plaintiff and the Class, who could not have known about the true nature and contents of the Defendants' products.

98.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Defendants' products. The terms of that contract included implied promises and affirmations of fact made by Defendants on the Defendants' products' packaging and through its marketing campaign, as described above. The Defendants' products' packaging and advertising constitute implied warranties, became parts of the basis of the bargain, and are parts of a standardized contract between Plaintiff and the members of the Class on the one end, and Defendants on the other.

99.     At all times, and as detailed above, Defendants impliedly warranted that their products were safe, effective and fit for use by consumers, including Plaintiff and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

100.    At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Defendants' products, Defendants knew or should have known that it had breached the terms of the contract, including the implied warranties with Plaintiff and the Class.

101.    Members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendants, and upon said implied warranties, when purchasing Defendants' products.

102.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff and the Class could not have known about the true content of the Defendants' products.

103.    As a direct and proximate result of Defendants' breach of implied warranties and breach of merchantability, Plaintiff and Class members have sustained injuries by purchasing the Defendants' products, which were not as represented, thus entitling Plaintiff to judgment and

19

equitable relief against Defendants, as well as restitution, including all monies paid for the Defendants' products and disgorgement of profits from Defendants received from sales of the products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

104.    All conditions precedent to Defendants' liability under this contract, including notice, has been performed by Plaintiff and the Class.

## COUNT VI

## NEGLIGENCE

105.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

106.    Defendants had a duty to represent their product accurately.  Defendants breached that duty by negligently making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about their product.

107.    Defendants violated their duties owed to consumers by purposefully or negligently engaging in the deceptive conduct described herein with the intent to deceive Plaintiff, and consumers similarly situated.

108.    Plaintiff and the other Class members, as a direct and proximate cause of Defendants' breach of their duties, were damaged by receiving a worthless, harmful product.

109.    Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants' as a result of Defendants' false claims that their product was safe and complied with "CARB regulations in the State of California,".

110.    As described above, Defendants' actions violated a number of express statutory provisions designed to protect Plaintiff and the Class.

111.    Defendants' illegal actions constitute negligence *per se*.

112.    By reason of the foregoing, Plaintiff and the other Class members have suffered

damages in an amount to be determined at trial.

**COUNT VII**

**UNJUST ENRICHMENT**

113.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

114.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing, and sales of their product, Defendants was unjustly enriched at the expense of Plaintiff and the Class.

115.    Defendants sold the Toxic Laminate Flooring to Plaintiff and the Class which was a product that was illegally sold, misbranded, and had no economic value.

116.    It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class in light of the fact that the product was not what Defendants purported it to be.

117.    Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the toxic Laminate Flooring product at issue.

118.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of her claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated persons, prays for judgment against Defendants as follows:

21

A.      For an order certifying this case as a Class Action and appointing Plaintiff and her counsel to represent the Class;

B.      That the Court adjudge and decree that Defendants have engaged in the conduct alleged herein;

C.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

D.      Ordering Defendants to engage in a corrective advertising campaign;

E.      Awarding Plaintiff and the proposed Class members damages;

F.      Awarding restitution and disgorgement to Plaintiff and the other Class members;

G.      Awarding attorneys' fees and costs; and

H.      Providing such further relief as may be just and proper.

Dated: March 6, 2015

Respectfully submitted,

*/s/ Tim Howard*
Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

*Attorney for Plaintiffs*